UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLEY KAPLAN, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>TRANSUNION LLC,<br><br>*Defendant*. | Civil Action<br><br>Case No. _____<br><br>JURY DEMANDED |

## CLASS ACTION COMPLAINT

On behalf of herself and all others similarly situated, Plaintiff Lesley Kaplan ("Plaintiff" or "Ms. Kaplan"), through her attorneys, respectfully alleges as follows:

### NATURE *of the* ACTION

1. This is a consumer class action based upon the widespread violations by Defendant TransUnion, LLC ("TU," "TransUnion" or "Defendant") of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"). TU is regulated as a consumer reporting agency ("CRA") under the FCRA. TU deprives consumers of their rights by failing to comply with the FCRA requirements to block the reporting of fraudulent information on credit reports whenever it is presented with an identity theft report, in violation of 15 U.S.C. § 1681c-2.

2. Every year, individuals who were the victims of identity theft and requested that TU block inaccurate and fraudulent information related to the identity theft have been similarly aggrieved by the same violations of 15 U.S.C. § 1681c-2.

3. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for herself and a class of similarly situated consumers affected by TU's failure to comply with FCRA section 1681c-2's identity theft blocking requirements.

## *The* PARTIES

4.   Plaintiff Lesley Kaplan is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c), and resides in Richmond, California.

5.   TransUnion, LLC is a "person," and a "consumer reporting agency," as defined by the FCRA, 15 U.S.C. §§ 1681a(b) and 1681a(f), respectively. TU prepares and sells "consumer reports" within the meaning of 15 U.S.C. § 1681a(d). TU regularly conducts business in the Eastern District of Pennsylvania and maintains a main office that is responsible for communications with consumers and for blocking fraudulent information located at 1510 Chester Pike, Crum Lynne, PA 19022. Correspondence from TU to Plaintiff Kaplan in this matter bears the return address of P.O. Box 805, Woodlyn, PA 19094-0805.

## JURISDICTION *and* VENUE

6.   Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that all claims are brought under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*.

7.   Venue lies proper in this District pursuant to 28 U.S.C. § 1391(b).

## STATEMENT *of* FACTS

### *TransUnion's Practices*

8.   TransUnion is one of the "big three" credit reporting agencies (singular "CRA") in the United States.

9.   TU sells consumer reports (commonly called "credit reports") about millions of consumers annually.

10.   TU is regulated by the FCRA.

11.   The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant,

3

and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

12. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

13. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies, such as TU, were under no obligation to treat an identity theft claim any differently than a regular dispute.

14. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required CRAs to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft no later than 4 business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15. The ability to obtain a "block" of information is especially important to consumers because once a block is in place, the account is permanently removed from the consumer's credit report and creditors are prohibited from sending the blocked account to collections. *See* 15 U.S.C. § 1681m(f).

16. A regular consumer dispute (where no claim of identity theft is made), on the other hand, can at best result only in the "deletion" of an account, which removes the account from the consumer's credit report but allows the creditor to continue with collections unabated. *See* 15 U.S.C. § 1681i. Moreover, regular consumer disputes can take up to 30-45 days to process. *Id.*

17. A CRA may decline to "block" information only if the CRA reasonably determines that the consumer's request is based on a material misrepresentation, made in error, or that the consumer obtained possession of the goods, services, or money at issue in the transaction(s). *See* 15 U.S.C. § 1681c-2(c)(1).

18. In the absence of such a determination of material misrepresentation, error, or receipt of goods, a CRA cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

19. If a block is declined, the CRA must then notify the consumer in writing of the business name and address of any furnisher of information that it contacted upon receiving the identity theft report and that the consumer has a right to add a statement to the file disputing the accuracy or completeness of the disputed information. *See* 15 U.S.C. §§ 1681c-2(c)(2) and 1681i(a)(5)(B).

20. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Experian Info. Solutions, Inc.*, No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

21. Despite the FCRA's requirements, TU regularly declines to block the reporting of fraudulent information by wrongfully rejecting identity theft reports outright and relying instead on the same verification procedures it uses for regular disputes. It does so because it finds it easier and more cost-effective to process blocking requests as regular disputes.

22.     In violation of the FCRA, TU willfully and negligently declines to block the reporting of information that consumers allege to have resulted from identity theft in violation of 15 U.S.C. § 1681c-2(a) despite its receipt of all required documentation from the consumers.

23.     The plain language of Section 1681c-2 is clear and TU is on notice of its requirements, both from guidance from the Federal Trade Commission and prior court decisions such as *Osada*, *supra*.

24.     According to standardized policies and procedures, TU willfully treats valid identity theft claims as regular credit disputes.

25.     For any identity theft claims TU deems to be lacking in information, TU willfully— and according to standardized policies and procedures—declines to block the reporting of the fraudulent information outright rather than requesting additional information or documentation directly from the consumer as required by 12 C.F.R. § 1022.3(i).

*Facts Pertaining to Class Representative Plaintiff Lesley Kaplan*

26.     Ms. Kaplan is a victim of identity theft.  A person used Ms. Kaplan's credit card information without her knowledge to attempt to make two purchases on April 15, 2023. Wells Fargo Bank, N.A. ("WF" or "Wells") approved one charge and declined the other.

27.     Ms. Kaplan, concerned about the possibility of further ramifications of identity theft, filled out a police report with her local police department, the Richmond (California) Police Department, on June 7, 2023.

28.     She also filed an Identity Theft Report online with the Federal Trade Commission ("FTC") on June 9, 2023.

29.     In September of 2023, worried about the identity theft incident from four months prior, Ms. Kaplan reviewed her Trans Union credit report and saw that TU was reporting the fraudulent charge as a valid and unpaid charge on her Wells Fargo credit line on her credit report.

30. Ms. Kaplan then wrote a letter to Trans Union Consumer Solutions in Chester, Pennsylvania dated October 9, 2023. This letter detailed the nature of the fraudulent transaction, the amount of the fraudulent charge, and the amount of interest associated with it. She included copies of her identifying information and proof of residence, dispute form that TU uses, the police report Ms. Kaplan had made with the Richmond (California) Police Department, and the Identity Theft Report she filed with the FTC. The documents she provided in this correspondence meet the requirements of 15 U.S.C. § 1681c-2(a)(1)-(4).

31. On October 14, 2023, TU replied to Ms. Kaplan with a form letter (hereafter, the "605B Letter") stating:

> In accordance with section 605B of the FCRA, we have determined that your request has either a) been made in error b) is a misrepresentation of material fact relevant to the request to block, and/or c) you have obtained possession of goods, services or money as a result of the transaction issue.

32. Ms. Kaplan complied with all of 15 U.S.C. § 1681c-2(a), including all of the information required by 15 U.S.C. § 1681c-2(a)(1)-(4). The plain language of this section of the statute required TU to "block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of [the requirements of 15 U.S.C. § 1681c-2(a)(1)-(4)]."

33. Instead of complying with the statute and blocking the information on Ms. Kaplan's report stemming from identity theft, TU undertook no investigation at all, and declined to block the information under the provisions of 15 U.S.C. § 1681c-2(c)(1) without any evidence whatsoever. However, Section 1682c-2(c)(1) states that a consumer reporting agency may decline to block only if it:

> "*reasonably determines* that – (A) the information was blocked in error or a block was requested by the consumer in error; (B) the information was

7

> blocked, or a block was requested by the consumer, on the basis of a material misrepresentation of fact by the consumer relevant to the request to block; or (C) the consumer obtained possession of goods, services, or money as a result of the blocked transaction or transactions."

(emphasis added).

34. It is telling that TU's 605B Letter mentions all three possibilities considered by Section 1682c-2(c)(1). This boilerplate recitation of all potential statutory exceptions illustrates how TU simply refused the blocking request, based on no evidence of consumer error, material misrepresentation, or of the consumer receiving the goods or services at issue. Indeed, the use of the conjunction "and/or" in TU's 605B Letter makes it plain that TU made no determination at all, because it is impossible for TU to have determined both that Ms. Kaplan made the blocking request "in error" "and" also that she allegedly obtained possession of the good or services at issue. Therefore, there was no *reasonable determination* as required by the language in this section.

35. The 605B Letter did not explain why TU believed the identity theft report to be invalid nor did it request any specific additional information from Plaintiff. Rather, it acknowledges receiving an "identity theft clock request" made by Plaintiff to TU.

36. The 605B Letter did not contain any notice of the business name and address of any furnisher of information that TU contacted upon receiving Plaintiff's identity theft report nor did TU provide such notice to Ms. Kaplan within five (5) business days thereafter.

37. The 605B Letter specifically references "Section 605B of the FCRA" (Section 605B is codified as 15 U.S.C. § 1681c-2). Furthermore, it contains language directly mimicking the requirements of 15 U.S.C. § 1681c-2(c)(1)(A)-(C). Therefore, TU admits by the content of the 605B Letter that Ms. Kaplan's dispute is a request to block under 15 U.S.C. § 1681c-2 and not some other type of dispute of information appearing on her credit report.

8

38. Rather than block the fraudulent information or request specific additional information from Plaintiff, TU disregarded its obligations under the FCRA by merely seeking verification of the disputed accounts from the furnishers of that credit information, and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of 15 U.S.C. § 1681c-2.

39. TU followed up with an additional letter to Ms. Kaplan dated October 27, 2023, stating that "our investigation is now complete." The letter indicates that TU had contacted Wells, who erroneously verified the transaction as accurate, a third-party conclusion that TU simply parroted. The TU letter shows Ms. Kaplan's updated history with Wells, reflecting the transaction amount, plus interest, of the transaction that Ms. Kaplan has sworn multiple times she did not initiate.

40. Defendant is falsely reporting the amount Plaintiff owes to Wells Fargo Bank on her credit line (hereinafter "inaccurate information").

41. As specified in her police report and FTC report, Plaintiff does not owe the amount of the disputed transaction and does not owe any associated accrued interest associated with the same.

42. The inaccurate information negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor, and Plaintiff's creditworthiness. The inaccurate information consists of an amount owing to Wells Fargo Bank that is the result of a fraudulent transaction, previously reported to Defendant as identity theft.

43. Defendant has been reporting the information about Plaintiff through the issuance of consumer credit reports that it has disseminated to various persons and credit grantors, both known and unknown, since October 2023.

44. Notwithstanding Plaintiff's efforts, Defendant has sent Plaintiff correspondence indicating its intent to continue publishing the inaccurate information and Defendant continues to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

45. Despite Plaintiff's efforts, Defendant has not made any reasonable determinations that support its decision to decline Plaintiff's blocking request.

46. Despite Plaintiff's efforts to date, Defendant has nonetheless deliberately, willfully, recklessly and negligently failed to block the fraudulent information, failed to perform reasonable reinvestigations of the above dispute as required by the FCRA, has failed to remove the inaccurate information and has continued to report the derogatory inaccurate information about the Plaintiff.

47. As a result of Defendant's conduct, Plaintiff and the Class suffered injury and damages in the form of lost credit opportunities, harm to credit reputation and credit score, and waste of time and resources.

48. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of its agency or employment, and under the direct supervision and control of the Defendant herein.

49. At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of one or more Classes of similarly situated consumers.

51. **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. Upon information and belief, TU receives and processes thousands of

requests to block fraudulent information along with identity theft reports each year, and TU maintains the names and addresses of the persons making those requests.

52. **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

(a) Whether TU's failure to block information alleged to result from identity theft was lawful;

(b) Whether TU had reasonably determined that it could refuse to block certain information under 15 U.S.C. § 1681c-2(c) or if it instead refused to block information based on an automatic determination without any investigation at all; and,

(c) Whether TU must specify the particular information it believes to be lacking when it requests additional information from a person making a claim of identity theft.

53. **Typicality. FED. R. CIV. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages that she seeks for absent class members.

54. **Adequacy. FED. R. CIV. P. 23(a)(4).** Plaintiff is an adequate representative of the Class. Her interests are aligned with, and are not antagonistic to, the interests of the members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

55. **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the

controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by TU's conduct. It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by TU's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## FIRST CLAIM *for* RELIEF

*Class Claim – Failure to Block Fraudulent Information*
*Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681c-2*

56. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

57. TU willfully and negligently failed to comply with the FCRA, Section 1681c-2(a) by failing to block information alleged by consumers to result from identity theft despite receiving all documentation required by Section 1681c-2(a).

58. Plaintiff brings her First Claim for Relief against TU on behalf of the following class:

> All consumers in the United States and its Territories to whom Defendant sent a Section 605B Letter, similar in form to the one it sent to Plaintiff on October 14, 2023, from two years before filing of the Complaint until the date of any class certification Order in this matter.

> Excluded from the class are: (1) consumers for whom Defendant possesses a record that (A) the block was requested by the consumer in error, (B) the block was requested by the consumer on the basis of a material

misrepresentation of fact by the consumer relevant to the request to block, or (C) the consumer obtained possession of goods, services, or money as a result of the blocked transaction or transactions; and (2) any judges assigned to this matter, or lawyers working on the same, or any of Defendant's officers.

59. Plaintiff and Class Members seek actual damages, statutory damages, punitive damages, attorney fees and costs pursuant to 15 U.S.C. §§ 1681n and o.

## SECOND CLAIM *for* RELIEF

*Individual Claim for Lesley Kaplan – Inaccurate Reinvestigation*
*Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681i(a)*

60. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

61. At all times pertinent hereto, Trans Union was a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

62. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

63. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

64. Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Defendant is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. § 1681i(a).

65. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff, including emotional distress and reputational harm, and, as a result, Defendant is liable to the Plaintiff individually for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

13

## PRAYER *for* RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as follows:

A.    An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.    An award of actual, statutory and punitive damages for Plaintiff and the Class;

C.    An award of pre-judgment and post-judgment interest as provided by law;

D.    An award of attorneys' fees and costs; and,

E.    Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

**FRANCIS MAILMAN SOUMILAS, P.C.,**

BY:    */s/ John Soumilas*
JOHN SOUMILAS
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA  19103
Tel.: (215) 735-8600
Fax: (215) 940-8000
jsoumilas@consumerlawfirm.com

Erika A. Heath
**FRANCIS MAILMAN SOUMILAS, P.C.**
369 Pine Street, Suite 410
San Francisco, CA 94104
(628) 246-1352
eheath@consumerlawfirm.com
 *Pro hac vice* application forthcoming

*Attorneys for Plaintiff and the Class*

14