IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LESLEY KAPLAN**, *on behalf of herself and others similarly situated*, <br>               **Plaintiff**, <br><br> v. <br><br> **TRANS UNION, LLC,** <br>               **Defendant.** | CIVIL ACTION <br><br><br><br> NO. 24CV2438 |

## OPINION

Plaintiff Lesley Kaplan sued Trans Union, LLC ("TransUnion"), on behalf of herself and a putative class of similarly situated individuals, for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). TransUnion now moves for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), on Kaplan's class claim. For the reasons that follow, TransUnion's Motion will be denied.

### I.    FACTUAL BACKGROUND[1]

Lesley Kaplan is a California resident who maintains a credit card account with Wells Fargo Bank, N.A. ("Wells Fargo"). TransUnion is a nationwide consumer reporting agency ("CRA"), whose business involves collecting and reporting consumer financial information in the form of credit reports.

On April 15, 2023, an unknown person used Kaplan's Wells Fargo credit card information to make (or attempt to make) two purchases—one for over $900 at Target, which

---

[1] Most of the following facts are taken from Kaplan's Complaint, well-pleaded allegations from which are taken as true at this stage. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The remaining facts are taken from certain "undisputedly authentic documents" upon which Kaplan relies—namely, the written communications between her and TransUnion that the latter has attached as exhibits to its Answer. *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019) (citation omitted).

Wells Fargo approved, and another for around $150 at a pizza restaurant, which Wells Fargo declined. Wells Fargo notified Kaplan of these suspicious purchases, and, concerned that her identity had been stolen, she filed a police report with her local police department on June 7, 2023. She also filed an online Identity Theft Report with the Federal Trade Commission ("FTC").

In September of the same year, Kaplan noticed that her TransUnion credit report listed the Target charge as an outstanding debt on her Wells Fargo credit card account. She wrote a letter to TransUnion on October 9, 2023, explaining the circumstances surrounding the suspected identity theft and requesting that the charge be removed from her credit report. She enclosed copies of her police report, FTC filing, and TransUnion's proprietary dispute form, as well as personal identification documents and proof of residence.

On October 14, 2023, TransUnion replied to Kaplan with a form letter, wherein it acknowledged receipt of Kaplan's "identity theft block request" and explained that it "decline[d] to block the information" for the following reasons:

> In accordance with Section 605B of the FCRA, we have determined that your request has either a) been made in error; b) is a misrepresentation of material fact relevant to the request to block and/or c) you have obtained possession of goods, services or money as a result of the transaction at issue.

The letter further explained that TransUnion had "opened a reinvestigation of the disputed information," during which it would "contact the source of the disputed information to advise them of [the] dispute" and "to verify the accuracy of the reported information." On October 27, 2023, TransUnion sent a follow-up letter indicating that it had contacted Wells Fargo and determined that the disputed charge was legitimate and would therefore remain on her credit report.

Kaplan sued TransUnion for one class claim and one individual claim under the FCRA;

2

both claims relate to TransUnion's treatment of the disputed information on her credit report. TransUnion has moved for judgment on the pleadings solely with regard to Kaplan's class claim, which specifically alleges that TransUnion "willfully and negligently failed to comply with the FCRA . . . by failing to block information alleged by consumers," including by Kaplan herself, "to result from identity theft . . . ." TransUnion argues that Kaplan fails to state a claim upon which relief can be granted.

## II. LEGAL STANDARDS

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when "the movant clearly establishes that no material issue of fact remains . . . and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)). When deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp.2d 591, 595 (E.D. Pa. 2010). Further, the allegations "presented in the pleadings and the inferences to be drawn therefrom" must be accepted and construed "in the light most favorable to the nonmoving party." *Rosenau*, 539 F.3d at 221 (citation omitted).

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010)). "To survive a motion to dismiss, a

3

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted).

### III. DISCUSSION

The FCRA "'was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). To that end, the statute sets out rules governing the dissemination of consumer credit information by CRAs such as TransUnion. *See* 15 U.S.C. § 1681(b) ("It is the purpose of this title to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . information in a manner which is fair and equitable to the consumer . . . .").

In 2003, Congress amended the FCRA to include specific protections for victims of identity theft. *See* H.R. Rep. No. 108-263, pt. 1, at 1 (2003) (explaining that the 2003 amendments sought to "prevent identity theft, improve resolution of consumer disputes, improve

the accuracy of consumer records, [and] make improvements in the use of, and consumer access to, credit information"). Among the 2003 amendments is § 605B, which provides a mechanism for consumers to obtain a "[b]lock of information resulting from identity theft." 15 U.S.C. § 1681c-2 (codifying § 605B). § 605B states that CRAs:

> shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of—(1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and[,] (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a). The statute goes on to provide that CRAs:

> may decline to block, or may rescind any block, of information relating to a consumer under this section, if the consumer reporting agency reasonably determines that—(A) the information was blocked in error or a block was requested by the consumer in error; (B) the information was blocked, or a block was requested by the consumer, on the basis of a material misrepresentation of fact by the consumer relevant to the request to block; or[,] (C) the consumer obtained possession of goods, services, or money as a result of the blocked transaction or transactions.

15 U.S.C. § 1681c-2(c).

Kaplan's class claim arises under § 605B. Specifically, she alleges that TransUnion refused to "block the reporting" of the "information that resulted from an alleged identity theft"—namely, the disputed Target charge on her Wells Fargo credit card account—despite her provision to TransUnion of all the documentation required by statute. 15 U.S.C. § 1681c-2(a). She further alleges that TransUnion failed to carry out a proper investigation into the legitimacy of her claim and denied her request "without any evidence whatsoever," as evidenced by the "boilerplate recitation of all potential statutory exceptions" (and the lack of any explanation of the results of its investigation) contained in TransUnion's letter denying her request. In doing so, Kaplan argues, TransUnion violated § 605B's requirement that a requested block only be denied

if a CRA "reasonably determines" that one of the exceptions applies.  15 U.S.C. § 1681c-2(c).

TransUnion, for its part, does not deny that it failed to block the information at issue, or that Kaplan provided it with all the documentation required when requesting a block pursuant to § 605B.  Nor does it argue that Kaplan has failed to plead sufficient facts to support the allegations underlying her Complaint.  Instead, TransUnion argues that Kaplan fails to state a claim for relief under § 605B for two other reasons: first, because Kaplan did not actually request a "block" of information as contemplated by the text of § 605B but sought a modification of her Wells Fargo balance instead; and second, that even if Kaplan's request were understood as a block request under § 605B, compliance would be impossible.  Each of these arguments will be considered in turn.

### A. Whether Kaplan's Request Implicates § 605B

TransUnion's first argument is that Kaplan fails to state a claim under § 605B because her request was not truly a bid to *block* fraudulent information, but rather a request "to *modify* the balance of her [Wells Fargo] account" as it appeared on her credit report.  This difference is material, it argues, because the language of § 605B neither commands nor empowers a CRA to "modify" a consumer's account balance.  Instead, TransUnion argues, § 605B only provides a mechanism for consumers to block from their credit report fraudulent accounts or tradelines—*i.e.*, credit accounts which have been opened, by someone other than the consumer, using the consumer's stolen identity.  So, to state a claim under TransUnion's reading of § 605B, a consumer must first show that they had a new account or line of credit opened in their name; since Kaplan has not done so, TransUnion argues, her claim should be dismissed.

TransUnion's characterization of § 605B is belied by the statute's plain text.  § 605B requires a CRA to "block the reporting of *any information* in the file of a consumer that the

consumer identifies as information that resulted from an alleged identity theft . . . ." 15 U.S.C. § 1681c-2(a) (emphasis added). Nothing in the text of this statute suggests that its reach is limited to new accounts or credit lines;[2] on the contrary, the terms "any information" comfortably contain the type of data Kaplan sought to block—namely, a specific charge on her credit card account alleged to have been made by an identity thief.

The FCRA's definition of "identity theft" further supports this reading. Under the statute's terms, "identity theft" means "a fraud committed using the identifying information of another person, subject to such further definition as the [Consumer Financial Protection Bureau] may prescribe, by regulation." 15 U.S.C. § 1681a(q)(3). The Bureau's regulations further define "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," such as a person's "card" or "account number." 12 C.F.R. §§ 1022.3(g), (g)(4) (incorporating 18 U.S.C. § 1029(e)(1)'s definition of "access device," which includes "any card" or "account number" which can be used "to obtain money, goods, services, or any other thing of value").

In her Complaint, Kaplan pleaded that someone used her "card" (or its associated "account number") to make a fraudulent purchase, and that her TransUnion credit report contained "information" showing this purchase as an outstanding debt. She contacted TransUnion, asked it to remove the information relating to that charge because it "resulted from an alleged identity theft," and provided it with all the requisite documentation set forth in § 605B. As recited here, Kaplan's actions fall squarely within the plain language of § 605B.

---

[2] TransUnion argues that the one of the dictionary definitions of "block"—"to shut off from view"—supports its argument that § 605B only reaches fraudulent accounts, not individual charges posted to those accounts. *Block*, Merriam-Webster, https://www.merriam-webster.com/dictionary/block#dictionary-entry-2 (last visited December 17, 2024). But Kaplan's request that TransUnion "remove" the charge made by the identity thief is exactly a request "to shut off [that charge] from view." In this sense, TransUnion's appeal to the dictionary fails to move the needle in its favor.

Indeed, TransUnion recognized as much when it sent her a letter acknowledging receipt of her "identity theft block request" and cited directly to § 605B in doing so. Accordingly, TransUnion's first argument fails.[3]

### B. Whether TransUnion is Capable of Fulfilling Kaplan's Request

TransUnion's second argument is rooted in the technical capabilities of its credit monitoring and reporting system. It argues that fulfilling Kaplan's request to block the disputed charge on her Wells Fargo account (while still reporting other data on her Wells Fargo account) would amount to an "enormous and impossible undertaking" whereby it would have to: "(1) obtain [her] account level details in order to review the specific charges incurred on her Account; (2) determine [her] interest rates . . .; and[,] (3) perform ongoing monthly monitoring to determine what changes to the Account were made and then perform mathematical calculations to determine what the new modified balance would be." Such an undertaking, it argues, is neither technically possible nor required by § 605B.

As an initial matter, TransUnion is right that the plain text of § 605B does not require a CRA to perform any specific mathematical procedure when implementing a block request. The statute simply requires that a CRA, by whatever means available to it, "block the reporting of any information" alleged to have been the product of identity theft within four days of receiving a valid blocking request. 15 U.S.C. § 1681c-2(a). But the fact that § 605B does not prescribe

---

[3] Despite the close match between the statute's language and Kaplan's request, TransUnion argues that the legislative history surrounding the passage of § 605B militates in favor of its favored interpretation. *See generally The Growing Problem of Identity Theft and Its Relationship to the Fair Credit Reporting Act: Hearings Before the S. Comm. on Banking, Hous., & Urb. Affs.*, 108th Cong. (2003) (collecting testimony recommending, among other things, that Congress allow CRAs to "permanently block fraudulent accounts"). But "where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). Legislative history is not relevant here. *See, e.g., Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("When the words of a statute are unambiguous, . . . [the] judicial inquiry is complete.") (citation and internal quotation marks omitted).

any specific method of blocking, does not excuse TransUnion from compliance with the statute. Under its plain terms, § 605B still requires that TransUnion do *something* to stop the flow of information alleged to have resulted from identity theft.

In that connection, TransUnion essentially argues that its hands are tied—that the only way to comply with its statutory duties to report accurate consumer credit information while still obeying the directives of § 605B is to perform the "impossible" calculation described above.  But Kaplan challenges this averment, alleging instead that TransUnion had the ability to effectuate her request in a manner compliant with § 605B but "deliberately" and "willfully" refused to do so.  It is Kaplan's version of the facts, and the reasonable inferences that can be drawn therefrom, that govern the analysis at this stage.  *See Rosenau*, 539 F.3d at 221 (explaining that, when analyzing a 12(c) motion, the allegations "presented in the pleadings and the inferences to be drawn therefrom" must be accepted and construed "in the light most favorable to the nonmoving party" (citation omitted)).[4]

Kaplan has competently pleaded that TransUnion was able to carry out her request in a manner that complied with § 605B, but purposefully refused to do so.  Accordingly, TransUnion's second argument—that Kaplan's request was impossible to effectuate—fails as well.

IV.    **CONCLUSION**

For the foregoing reasons, TransUnion's Motion for Judgment on the Pleadings will be denied.

---

[4] The same goes for TransUnion's argument that "only Wells Fargo has the transactional account level information that could satisfy" Kaplan's request.  Kaplan's allegation that TransUnion "deliberately" and "willfully" reasonably implies that TransUnion was able to, but refused to, effectuate her request.  At this stage, that fact must be accepted as true.  *See Rosenau*, 539 F.3d at 221.

An appropriate order follows.

> BY THE COURT:
>
> /S/WENDY BEETLESTONE, J.
>
> _____
> **WENDY BEETLESTONE, J.**