**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| LESLEY KAPLAN, on behalf of herself and all others similarly situated,<br><br>   *Plaintiff*,<br> v.<br><br>TRANS UNION LLC,<br><br>   *Defendant*. | Case No. 2:24-cv-02438-WJB |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSTION TO DEFENDANT TRANS UNION LLC'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF <u>KERMIT ROOSEVELT</u>**

John Soumilas
James A. Francis
Lauren KW Brennan
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
(T) 215-735-8600
(F) 215-940-8000
jsoumilas@consumerlawfirm.com
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Erika A. Heath
**FRANCIS MAILMAN SOUMILAS, P.C.**
351 California Street, Suite 700
San Francisco, CA 94104
(T) 628-246-1352
(F) 215-940-8000
eheath@consumerlawfirm.com

## I.      INTRODUCTION AND BACKGROUND

Plaintiff Lesley Kaplan opposes Defendant Trans Union LLC's Motion to Exclude the Opinions and Testimony of Kermit Roosevelt (ECF 81 the "Motion"). Professor Roosevelt, a law professor at the University of Pennsylvania Carey Law School, will help explain to the fact-finder key legal terms and the legal compliance framework that Trans Union's conduct has placed at the center of this case. The typical consumer case under the Fair Credit Reporting Act ("FCRA") may have no need for a legal expert.  But this one does.[1]  The reason a legal expert is needed by Plaintiff here is because this case focuses upon two technical documents drafted by Defendant:  (1) the "Letter 775," which Trans Union has sent to over 280,000 consumer class members (Ex. 1); and (2) the "Denial Criteria" policy which purports to justify denial of class member block requests via the alleged review of certain internal "proxies." (Ex. 2).

Because these two documents are so legally complex, and because they must be deeply understood by a lay jury in this case, an explanation of key legal terms used therein and the regulatory framework in which they function is essential. These two documents will be difficult to understand outside of their proper context. Through corporate and compliance witnesses, Trans Union will present evidence about these documents favorable to its defenses. Plaintiff is not required to rely upon, or solely rely upon, defense witness testimony, and thus must be permitted to present evidence about the meaning, function and effect of these legally technical documents through a legal expert of her own choosing.

---

[1]      It is not unheard of for an FCRA case to have a lawyer testify as an expert. For example, attorney Eric Ferrari was qualified and permitted to testify at trial as an expert in an FCRA class case against Trans Union because he was able to provide explanations to the jury of some technical legal terms and the overall legal framework concerning information from a sanctions list maintained by the Office of Foreign Assets Control, the credit reporting data at issue in that case. *See Ramirez v Trans Union, LLC*, Civ. No. 3:12-cv-00632-JSC at ECF 271 pg. 4-5 (N.D. Cal. May 25, 2017).

In this sense, the case at bar is closer to a legal malpractice case than a personal injury case. The lay jury must not only judge whether a defendant acted like a reasonably prudent person, but also whether Trans Union does what it says it does via Letter 775 in technical terms, and whether its interpretation of FCRA section 1681c-2 – as embodied in the Denial Criteria policy – ran a high risk of causing harm that is known or is so obvious that it should be known. Contrary to Defendant's position, presenting this type of helpful evidence can be accomplished without "advising" the jury on the "ultimate legal issues" in this case.

To begin with, in its Letter 775 Defendant states (although it did not need to, as will be discussed below) that Trans Union is sending this letter "in accordance with Section 605B of the FCRA." (Ex. 1). Unlike defense compliance witnesses, Plaintiff Leslie Kaplan herself has no basis to explain what the FCRA is, much less "Section 605B" of the FCRA. One of the prerequisites of "Section 605B," now codified at 15 U.S.C. § 1681c-2, is a police report or Federal Trade Commission "identity theft report." *Id.* at § 1681c-2(a). What is "Section 605B"?  What is the import of an identity theft report? What are the implications for a consumer if he or she is untruthful in such a report? Professor Roosevelt can explain these terms and the general legal framework for requesting and obtaining a block under the FCRA.

Letter 775 goes on to state that Trans Union made a "determination" that was allegedly "in accordance" with the FCRA and then *paraphrases* the three statutory bases for a block denial enumerated in 15 U.S.C. § 1681c-2(c).  In order for Plaintiff to prosecute her case in chief, she must present Letter 775 to the jury and proffer some testimony explaining its content, including the three bases paraphrasing FCRA section 1681c-2(c).  Defendant's own choice of legal verbiage puts this content, with its legal jargon, at issue, and that content cannot be explained by someone with no legal background.

According to Trans Union's witnesses, Trans Union's internal "Denial Criteria" policy (Ex. 2) lists seven "proxies" to explain and allegedly justify the "determination" announced in Letter 775. Professor Roosevelt could proffer evidence to counter that point, which is sure to be made to the finder of fact.  What does "Section 605B" actually say?  What does Trans Union do before sending Letter 775?  Do the "proxies" track "Section 605B?" Do they conflict with it? Professor Roosevelt is well qualified to construe a federal statute and to point out obvious and not so obvious conflicts between a corporate policy and a statute. Trans Union is sure to contend to the jury that its "proxies" do the job of a "reasonable determination," as required by FCRA section 1681c-2(c). That's also what Letter 775 implies. Plaintiff must be permitted to proffer evidence to the contrary and she will be hampered to do so without the aid of a legal expert.

Letter 775 can be read to say that Trans Union simply does what 15 U.S.C. § 1681c-2(c) requires, and Trans Union corporate compliance witnesses have stressed this point in their depositions.  But does it?  Do the Denial Criteria policy and its "proxies" actually track "Section 605B"?  Do the proxies track other elements?  Are they good proxies?  Is another blocking policy possible? How would that work?  Does Trans Union's current policy and use of proxies (without any record of their alleged application in any particular case) run a high risk of harm? Trans Union has FCRA compliance corporate representatives who will offer testimony to justify its corporate policy. Plaintiff must also be permitted to proffer competing evidence like the opinions provided by Professor Roosevelt in his expert report.

Relatedly, this is a case seeking $100-$1,000 in FCRA statutory damages per consumer plus punitive damages for a *willful* violation of the statute.[2]  In order to decide the question of

---

[2]    The U.S. Supreme Court's leading decision on the subject of willful non-compliance under the FCRA is *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). In *Safeco* the Supreme Court "lowered the bar for what constitutes willful noncompliance" under the FCRA, stating that it includes both knowing and

willful non-compliance, the jury will likely grapple with a number of questions, including: (1) is Trans Union as an LLC with a legal and compliance department required to "know" about FCRA duties? (2) are the risks of harm from non-compliance with the FCRA's "blocking" requirement here "so obvious that they should be known" to a company like Trans Union? (3) is compliance with the FCRA's blocking requirements onerous? (4) is an alternative compliance policy feasible and how would it work? These are the types of questions raised in other FCRA willfulness cases and implicated by *Safeco*. Professor Roosevelt can help the finder of fact on these issues as well.

For all of the reasons below, Trans Union's present motion must be denied.

## II.    LEGAL STANDARD

If scientific, technical or specialized knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Civ. P. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 113 S. Ct. 2786, 125 L.

---

reckless violations. *Slantis v. Capozzi & Assocs., P.C.*, 2010 WL 4878846, at *4 (M.D. Pa. Aug. 10, 2010). In *Safeco*, 551 U.S. 47, 57, the Supreme Court held that Congress intended the term "willfully" in FCRA section 1681n(a) to have its "common law usage," which requires "reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations." 551 U.S. at 57. Thus, FCRA section 1681n(a) "giv[es] a plaintiff a choice of mental states to show in making a case for liability[.]" *Id*. at 60. Because "'willfully' covers both knowing and reckless disregard of the law, knowing violations are sensibly understood as a more serious subcategory of willful ones." *Id*. at 59. The Court went on to explain that "While 'the term recklessness is not self-defining,' the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.' *Farmer* v. *Brennan*, 511 U. S. 825, 836 (1994); *see* Prosser and Keeton §34, at 213–214." *Id*. at ___ (internal footnote omitted). Therefore, what Trans Union knew, when it knew it, whether it was acting recklessly, whether it was not properly reading or interpreting its blocking duties under the FCRA, and whether it ran a risk of harm that was so "obvious" that it "should have been known," are all issues concerning willful-noncompliance which will likely be explored in this case via both expert and lay testimony.

Ed. 2d 469 (1993). The Third Circuit has interpreted this rule as having three requirements. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). First, a witness proffered to testify to specialized knowledge must be an expert. *Ibid*. This requirement is interpreted liberally and is satisfied by a broad range of knowledge, skills, and training. *Ibid*.

Second, the expert must testify to scientific, technical, or other specialized knowledge that will assist the trier of fact. *Paoli*, 35 F.3d at 742. (quoting Fed. R. Civ. P. 702). This Circuit's jurisprudence, before and after *Daubert*, holds that an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable *United States v. Downing*, 753 F.2d 1224, 1237 (3d Cir. 1985) (before *Daubert)*; *Paoli*, 35 F.3d at 742 (after *Daubert*). In determining reliability, a litigant "has to make more than a prima facie showing that his expert's methodology is reliable[,]" but the "evidentiary requirement of reliability is lower than the merits standard of correctness." *Pineda v. Ford Motor Co.*, 520 F.3d 237 (3d Cir. 2008) (citing *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786).

Finally, the expert's testimony must "fit" the case. *Paoli*, 35 F.3d at 742-43. Fit embodies Rule 702's requirement that the testimony aid the trier of fact, and it requires that the testimony be relevant to an issue in the case. *See id.*; *Daubert*, 509 U.S. at 591, 113 S. Ct. 2786.

## III.   ARGUMENT

### A.   Professor Roosevelt's Opinions Do Not Advise The Jury On How To Resolve "The Ultimate Legal Issues" In This Case

While Kaplan agrees that neither Plaintiff's nor Defendant's legal expert in this case should "advise the jury" on how to resolve the "ultimate legal issues" in this case, that is not what Professor Roosever's report does.  Plaintiff moved to exclude parts of the report and testimony of Defendant's expert, attorney Troy Kubus, on this same theory, and also on other grounds.  ECF 42. This Court ruled in Plaintiff's favor and precluded Kubus from testifying, not entirely, but as to

5

"alleged FCRA compliance, interpretation of the statute's exceptions, and willfulness to the extent that such testimony invades the province of the Court in that it sets forth the law, interprets the law *and/or seeks to advise regarding resolution of the ultimate legal issues in this case.*"   ECF 73 (emphasis added).

Now Defendant argues that Professor Roosevelt should be precluded from testifying because his opinions allegedly also "advise regarding the resolution of the ultimate legal issues in the case." ECF 81-1 at 3.  But unlike attorney Kubus, Professor Roosevelt does not tell the jury how to rule on the FCRA section 1681c-2 class claim in this case.

Professor Roosevet's report is far more measured than that of Troy Kubes, which purports to find that Trans Union is "in compliance" with FCRA section 1681c-2 because its conduct allegedly falls with the section 1681c-2(c) exceptions, and in any event is not in "willful" violation of the FCRA. *See* ECF 42 at 3-6. By contrast, in his expert report Professor Roosevelt does not urge a ruling in favor of Kaplan or the Class. Nowhere does he advise that Trans Union was *not in compliance* or *was in violation* of the FCRA.  Nowhere does he state that in his opinion Trans Union *should have* blocked under FCRA section 1681c-2, or was negligent or willful in not having done so in this case. In short, Professor Roosevelt's report does not advise the jury on how to resolve "the ultimate legal issues" in this case.

By its own terms, Professor Roosevelt's expert report purports to answers two questions: (1) what legal advice he would give to a consumer reporting agency ("CRA") about using the "Denial Criteria" that Trans Union uses as "proxies" and as the basis for its Letter 775; and further (2) what a model fraud blocking policy would look like if he were drafting it anew for a CRA. *See* Ex. 3 at pg. 1.  His answers to these two questions do not "advise the jury" what to rule or propose a verdict on the "ultimate issues in the case."

The fact that Professor Roosevelt provides his opinion as to whether Trans Union's internal "proxies" are equivalent to or "track" the "determination" that is actually required by "Section 605B" is not the same as an opinion on *the ultimate legal issues in this case.* By placing statutory jargon in a letter to lay consumers, Trans Union's Letter 775 puts technical statutory terms at issue in this case. What is "Section 605B"? What does Letter 775 say to class members within the fraud decline regulatory framework? What "determinations" were made (or not made) by Trans Union based upon its "proxies"? How does that track or compare to the "Section 605B" statutory exclusion? Trans Union will present evidence that its proxies do the right job and justify the Letter 775 declination. Plaintiff must be allowed to rebut this evidence. Professor Roosevelt explains how the proxies did not do the right job.

Further, presenting to the jury a model fraud blocking policy, as Professor Roosevelt does in his expert report, is not the same as an opinion on the "ultimate legal issue" in this case. The jury will not be asked to rule on the model policy or to render any verdict on how Professor Roosevel's model policy compares with Trans Union's "Denial Criteria" policy and use of "proxies." But such testimony can aid the jury in understanding how a CRA can make a "determination" to decline a block, what facts it would need to consider, and what documents it would be expected to maintain.

Plaintiff must present evidence in this case of the content of Letter 775 and the proxies and whether those proxies track with the "determinations" listed in Letter 775. Presenting this evidence requires some familiarity with federal statutes. Plaintiff herself has no personal knowledge or basis on which to discuss the "Denial Criteria," and does not even know what Trans Union bases its alleged "determination" on as articulated in Letter 775. She cannot even explain personally what "Section 605B" refers to within Letter 775. Because Trans Union's Letter 775 and practices have

7

put these key legal terms at issue in this case, Plaintiff must be permitted to present expert legal evidence on those terms and the legal framework in which they purport to operate. Presenting this legal framework, within which Trans Union says it acted in this case, is simply not the same as opining on the "ultimate legal issue" to be decided by the trier of fact here.

Courts have been careful to draw a line between whether a legal expert (or any other expert) opines on whether a defendant was in compliance (*i.e.*, on the "ultimate legal issue") versus the regulatory framework on which certain business actions take place.  For example, in *Berckeley Inv. Group, Ltd. v. Colkitt*, the Third Circuit held that a former SEC lawyer *could testify* and that her testimony "could be helpful to the jury."  455 F.3d 195, 218-19. Although the Court held that the SEC lawyer could not testify "as to whether [Appellant] complied with legal duties" in that case, she could explain certain securities industry practices which were based upon laws and regulations governing the securities business. *Id.* (citing *Newtown v. Merril, Lnch, Pierce, Fenner & Smith*, 135 F.3d 266 (3d Cir. 1998)); *see also Sec. & Exch. Comm'n v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 250, 258-59 (E.D. Pa. 2021) (overruling objection that law professor was not qualified due to no work experience in the investment advising industry, and finding that "Professor Macey is an expert on the *legal framework that shapes the investment advising industry*.") (emphasis added). Similarly, Professor Roosevelt can help the jury understand the legal terms and framework that regulate fraud block requests and that triggered the sending of Letter 775.

Trans Union complains that Professor Roosevelt opines on why he would not advise a CRA to deviate from the three statutorily-required "determinations" or use "proxies" because the statute "removes discretion" from a CRA in this context. ECF 81-1 at 4-5. At deposition Professor Roosevelt stated the obvious, that his advice to a CRA about "proxies" is based upon legal analysis and legal training.  (Ex. 4, K. Roosevelt Dep. at 199, see transcript generally).  These legal opinions

8

are helpful and relevant precisely because the standard of care here is whether Defendant made the reasonable determination required by a federal statute.  If the standard of care was merely whether a defendant acted like a "reasonably prudent person" driving on the highway, no law professor or legal expert would be needed. But, the case at bar raises legal compliance issues because of Trans Union's business decision to draft and send a letter to hundreds of thousands of consumers which stated that it is acting "in accordance" with "Section 605B" of the FCRA. In order for the jury to assess reasonable conduct, it must have some understanding of the legal context and framework governing CRAs and this requires some legal training and legal analysis.

Trans Union's Letter 775 paraphrases and cites to the FCRA, but its internal Denial Criteria policy and use of "proxies" is different from the FCRA. (Compare Ex. 1 to Ex. 2). The jury will naturally wonder – Is that okay? In what context is it not okay?  Trans Union's witnesses will present evidence that the internal "proxies" and the Letter 775 "determinations" are in fact the same thing. Given this context, Plaintiff must be permitted to present evidence that they are not the same thing. Professor Roosevelt explains a point that may appear obvious, but Trans Union clearly disagrees: FCRA section 1681c-2(c) has three exceptions only and a CRA like Trans Union may consider only those three statutory exceptions, not other factors.[3]

---

[3]     Consider, by contrast, if consumer plaintiffs testified that although they did not strictly meet all four of the prerequisites for a block enumerated in FCRA section 1681c-2(a), they should still be entitled to a block anyway because they are "really victims" of fraud or because they submitted a "notarized document" that can serve as a "proxy" for a police report since that too was made under penalty of perjury. If plaintiffs were permitted to take such a "proxies" position at trial, a CRA defendant should be permitted to proffer evidence as to why it cannot accept proxies from consumers for the section 1681c-2(a) factors. Similarly, if Trans Union will be permitted to present evidence at trial here that made a "reasonable determination" under the FCRA (as its Letter 775 will suggest to the jury), Plaintiffs must be permitted to proffer evidence as to why the "Denial Criteria" policy and use of "proxies" simply do not amount to a "reasonable termination" under the FCRA. This type of evidence must implicate legal standards.  There is no way around it given the evidence in this case.

This type of legally technical evidence is absolutely vital if a lay jury is to understand what Letter 775 says and what actually happens behind the scenes at Trans Union using its Denial Criteria, as well as what can happen behind the scenes at any CRA following a model fraud blocking policy like the one Professor Roosevelt proposes. This type of evidence can be presented carefully without advising the jury how to rule on the ultimate legal issues. Through Mr. Kubus and its corporate compliance witnesses, Defendant will present such definitional and contextual evidence at trial. Plaintiff must be permitted to do the same, and Professor Roosevelt's export report is helpful in this regard.

**B.      Professor Roosevelt Opinions "Fit" And His Experience Is "Relevant"**

Defendant also seeks to exclude Professor Roosevelt due to his opinions allegedly lacking a "fit" to this case (ECF 81-1 at 6) and because he allegedly lacks "relevant experience" (ECF 81-1 at 9).  These arguments misconstrue Plaintiff's proffer and what experience is relevant to such a proffer.

As explained in more detail above (Secs. I and III(B)), Trans Union's Letter 775 specifically references "Section 605B" of the "FCRA" and its alleged "determination" under a self-serving and inaccurate paraphrasing of 15 U.S.C. § 1681c-2(c) and therefore invites a legal expert witness into this case. What does Letter 775 mean? What does "Section 605B" require? What "determination" is actually required under "Section 605B?  What determination was made or not made here under Trans Union's "proxies"? Is that the same as a "Section 605B" determination? What determination could have been made under a model policy?  These are some questions put at issue by Trans Union's Letter 775.

Presumably, Defendant could have written a different letter that complied with section 1681c-2(c)(2), which is what the FCRA requires:

(2)Notification to consumer
If a block of information is declined or rescinded under this subsection, the affected consumer shall be notified promptly, in the same manner as consumers are notified of the reinsertion of information under section 1681i(a)(5)(B) of this title.

15 U.S.C. § 1681c-2(c)(2).  Such a letter requires no reference to "Section 605B" of the "FCRA" or any alleged "determination." Defendant was simply required to "promptly" notify the consumer. A one-line letter stating, for example, "we are writing to notify you that we have declined you block request" would satisfy section 1681(c)-2's requirements. The section's language stating "in the same manner as  . . . section 1681i(a)(5)(B) of this title" required that the notice to be sent within "5 business days,"  (which Trans Union did not do) and that it include the  "name and address of any furnisher of information contacted and the telephone number of such furnisher" (which Defendant also did not do in Letter 775) and further "a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the disputed information" (which Defendant also did not do in Letter 775).   15 U.S.C. § 1681i(a)(5)(B).

But there is no question that the facts of this case and the composition of the class here hinges on Letter 775.  In other words, Professor Roosevents's opinions are not "legal conclusions" as Defendant would have it, but a discussion of key *facts of record*.  Professor Roosevelt was retained to proffer testimony about the legal terms and implications emanating from those facts which cannot be readily known by a lay jury.  As noted above, Trans Union could have simply said in a letter to Kaplan:

> We are writing to notify you that we have declined your block request.  The furnisher of the information is Wells Fargo with an address at _____  and phone number at ____.  You may add a statement to your Trans Union file disputing the accuracy or completeness of the disputed information by sending it to _____.

11

Such a hypothetical letter might not have invited a legal expert into this case. Letter 775, however, does invite a legal expert because it cites to the FCRA at "Section 605B" and references a "determination" under a three-pronged test. *See* Ex. 1.

Defendant's arguments that Professor Roosevelt's opinions allegedly do not "fit" this case fail because Defendant misconstrues not only the "fit" but also this "case." This case focuses on a form communication sent to hundreds of thousands of consumers (the "Letter 775"). This letter cites to a pre-codified provision of the US Code ("Section 605B, now codified at 15 U.S.C. § 1681c-2) and unnecessarily states that Trans Union allegedly made a "determination" that was "in accordance with" the FCRA. Trans Union witnesses have testified that its internal "Denial Criteria" policy and use of "proxies" thereunder is the same as "determination" cited in Letter 775. These in no way for a jury to understand the basic "facts" of this case without the aid of some contextual information that can only come from someone who can read and interpret these highly legalistic documents.

In this sense, this "case" is akin to a legal malpractice case, where the factfinder must understand the legal standards under which the attorney was required to operate in drafting a contract or other legal document, for example. *See Lentino v. Fringe Emp. Plans, Inc.*, 611 F.2d 474, 480-81 (3d Cir. 1979) (applying rule that lawyer expert is needed to establish standard of care in legal malpractice cases); *Schmidt v. Currie*, 470 F. Supp. 2d 477, 483 (E.D. Pa. 2005), *aff'd,* 217 F. App'x 153 (3d Cir. 2007) ("The ordinary experience of a non-professional jury does not equip it either to understand or determine the reasonableness of attorneys' evaluation of their clients claims without expert assistance. ... [Plaintiff] does not explain, for example, how a jury is going to deliberate about "developing law" without the help of a legal expert."). Similarly, in this case a lay

12

jury must understand the regulatory framework in which Trans Union operates and the meaning of key terms as well as the purpose of its Letter 775 and Denial Criteria policy.

Professor Roosevelt's opinions therefore *"fit" this case* because they discuss the legal meanings, technicalities and implications of the Letter 775 (Ex. 1) and the "Denial Criteria" policy and its "proxies" (Ex. 2). These documents are not only legal in nature, but they are also the central *factual evidence* in this case. They must be discussed at trial. Thus, a proper reading of those documents and what they mean is a perfect "fit" to key parts of this case.

Given this context, Professor Roosevelt also has "relevant experience" to discuss the technical legal terms and statutory framework in which these documents exist. Any legal expert would be qualified. A University of Pennsylvania law professor is surely experienced to answer basic questions about legal terms and the statutory framework here. He does not need to be an "industry insider" or a CRA lawyer to have helpful opinions about Letter 775 and the Denial Criteria policy and use of proxies. Given Plaintiff's proffer, any person trained in law, even some law students, would have enough "relevant experience" to proffer testimony that would be helpful to a trier of fact here. Professor Roosevelt is thus plainly qualified for the opinions being proffered in this case.

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny Trans Union's Motion to Exclude the Opinions of Kermit Roosevelt.

Dated: June 4, 2026

Respectfully,
LESLEY KAPLAN
by her attorneys,

**BY:** /s/ *John Soumilas*
John Soumilas
James A. Francis
Lauren KW Brennan

13

**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
(T) 215-735-8600
(F) 215-940-8000
jsoumilas@consumerlawfirm.com
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Erika A. Heath
**FRANCIS MAILMAN SOUMILAS, P.C.**
351 California Street, Suite 700
San Francisco, CA 94104
(T) 628-246-1352
(F) 215-940-8000
eheath@consumerlawfirm.com

*Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed on this date and that service is therefore being made electronically on counsel of record for Defendant.

Date: June 4, 2026                                   _/s/ John Soumilas_____
                                                              John Soumilas